**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1265-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAYMOND WADE,

    Defendant-Appellant.

_____

Submitted January 9, 2017 — Decided  February 22, 2017

Before Judges Nugent and Currier.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 14-11-2652 and 15-06-1364.

Triarsi, Betancourt, Wukovits & Dugan, LLC, attorneys for appellant (Howard P. Lesnik, on the brief).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Raymond Wade is serving a seven-year prison sentence for unlawfully possessing a handgun.  Police found the

gun and other contraband while searching a hotel room after obtaining a warrant authorizing the search. Defendant unsuccessfully moved to suppress the gun and other contraband, and pled guilty to the weapons offense. In an attempt to have his conviction overturned, he argues these points on this appeal:

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS.

POINT II

NO CONSENT WAS OBTAINED FROM THE DEFENDANT AND THE ENSUING . . . SEARCH IS VOID.

POINT III

THE CONSENT WAS NOT VOLUNTARY AND IS VOID.

POINT IV

THE SEARCH WARRANT IS INVALID AND THEREFORE, THE SEARCH IS ILLEGAL AND UNCONSTITUTIONAL.

We conclude the warrant is valid, so we affirm.

On November 3, 2014, an Essex County Grand Jury returned an indictment charging defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f), and fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3. On the same day, the grand jury returned a second indictment charging defendant with second-degree

certain persons not to have weapons, N.J.S.A. 2C:39-7(a). On June 16, 2015, the grand jury returned a superseding indictment charging defendant with first-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).[1]

Defendant moved to suppress the handgun, evidence, and drug paraphernalia. The trial court denied the motion. Defendant later pled guilty to the amended charge of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a). In exchange, the State agreed to dismiss the first three-count indictment, not seek an extended-term sentence, and recommend a seven-year custodial term with forty-two months of parole ineligibility. The trial court sentenced defendant according to these terms and ordered him to pay appropriate penalties and assessments. Defendant appealed.

The trial court did not hold an evidentiary hearing on defendant's suppression motion but instead decided the motion after considering the parties' briefs and oral arguments. The parties based the facts in their briefs on the indictments, a police incident report, a municipal court document, and the search warrant documents. These documents establish the following facts.

---

[1] The parties apparently neither explained nor questioned the indictment charging N.J.S.A. 2C:39-7(a) as a first-degree offense.

On the morning of June 18, 2014, Newark Detective Richard Weber applied to the court for a warrant to search defendant's residence. In his affidavit, he detailed his training and attested to the following facts. The previous day, June 17, 2014, Narcotics and Gang Division Detectives met with a reliable confidential informant (CI). In the past, the CI had given the police information that led to numerous arrests and convictions.

During the June 17 meeting, the CI told detectives a black male, identified as defendant, was selling marijuana from a four-door silver Buick Century bearing a New Jersey registration. The CI said Wade was approximately six feet tall, weighed more than 200 pounds, and resided at a hotel in Newark (the hotel). The CI identified the hotel by name. According to the CI, defendant used a room at the hotel to package and store large amounts of marijuana. The CI also said defendant was known to carry a firearm, and if he did not possess the firearm while selling marijuana on South 20th Street, the firearm might be in his hotel room.

To confirm what the CI had told them, detectives drove by the hotel and observed a vehicle that matched the CI's description. The detectives checked the registration and confirmed the vehicle was a four-door 2001 silver Buick owned by defendant.

Later, the detectives set up surveillance of the hotel, but the Buick was no longer there. Some of the detectives drove to South 20th Street between Springfield Avenue and 19th Avenue. Upon their arrival, "several suspicious males . . . quickly dispersed due to [the detectives'] presence." At approximately 2:00 p.m., Detective Weber spotted the unoccupied silver Buick parked on the east side of South 20th Street.

Detective Weber and Sergeant Nunez set up surveillance at a location where they had a clear view of both sides of South 20th Street from Springfield Avenue to 19th Avenue. They also had a clear view of the silver Buick. The other detectives left the area and positioned themselves for immediate response, if required.

Almost immediately thereafter, heavy vehicle traffic began accumulating on 20th Street — a distance from the parked Buick — and several suspicious males engaged in conversations and made suspicious transactions. Moments later, the officers saw a black male wearing a v-neck t-shirt, blue jeans, and white sneakers, with a white hand towel over his head, later identified as defendant, at the location where they had observed the suspicious transactions. The officers observed defendant make several transactions with various vehicles. In each instance, the vehicles would stop and pull over near defendant's location. He retrieved

unknown objects from a grass and dirt area elevated by a retaining wall. He would then return to the pulled over vehicles and exchange the unknown items for what appeared to be currency.

According to Detective Weber's affidavit, "[a]fter conducting several similar transactions, [defendant] apparently needed to replenish his 'stash' (street terminology for a temporary concealed location to store narcotics for the purpose of distributing and/or selling C.D.S.)." The officers observed him walk to the silver Buick and enter the driver's door. Defendant tampered with the glove compartment, and after a brief moment, exited the Buick holding multiple items in both hands. As defendant got closer to the location of the previous transactions, the detectives recognized the items as bags of suspected marijuana.

Defendant walked to the location where the previous transactions had occurred and placed the bags under a piece of concrete in the elevated grass and dirt area. The detectives watched defendant as he made several more transactions and retrieved additional items from the Buick. Based on these observations, detectives ordered the backup units to arrest defendant. A search incident to his arrest uncovered a remote key, a room key with a brass tag number of "332," and hotel receipts reflecting his name, room number 332, and a Visa credit card.

A-1265-15T3

While backup units were arresting defendant, Sergeant Nunez retrieved from beneath the piece of concrete in the elevated grass and dirt area eleven blue-tinted Ziploc bags of suspected marijuana.

Detective Weber stated in his affidavit that defendant acknowledged his Miranda[2] rights, "which were read to him." When asked where he lived, defendant said he "stayed with a girl at [the hotel] in room [#]322." After being informed his Buick would be "towed for forfeiture process," defendant granted the officers permission to retrieve the registration and insurance card for the purpose of a tow. Upon retrieving these documents, the officers found twenty-two Ziploc bags of suspected marijuana in the glove compartment, consistent with the eleven bags of suspected marijuana recovered from beneath the concrete on 20th Street.

Police transported defendant to be processed and had the Buick towed to headquarters pending forfeiture proceedings. Detectives Weber and J. Cosgrove drove to the hotel, where they spoke to the manager. The manager confirmed defendant rented room 332 and had been staying at the hotel since April 2014. Defendant was scheduled to stay through June 20, 2014. The manager produced documentation, told the detectives there was only one key for the

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

room, and said he was unaware of anyone else residing in the room with defendant.

Detective Weber provided detailed information about the hotel as well as other information concerning matters not relevant to the issues presented on appeal.

The incident report contained essentially the same information as the affidavit submitted with the request for the search warrant. Defendant does not appear to dispute the facts in the affidavit, though he challenges the validity of the "search" of his car's glove compartment based on the facts set forth in the warrant and incident report.[3]

Before the trial court, defendant asserted the detectives did not read him his Miranda rights and he did not consent to the search of his car. He also argued he was never presented with any Miranda or consent forms. Moreover, even if police had presented such forms, defendant alleged he was already in custody, rendering his consent coerced and invalid. Based on those assertions, defendant argued the affidavit submitted in support of the warrant "sets forth facts gleaned during the unconstitutional and illegal

---

[3] Defendant does not appear to dispute the facts found by the court. In fact, with the exception of the identity of the man with whom defendant was conversing when the detectives first spotted him, the statement of facts in defendant's appellate brief are based on the trial court's findings of fact and the affidavit.

search of [his] vehicle. Therefore, as the facts and evidence set forth in the affidavit . . . were illegally obtained, the search warrant accordingly is invalid."

Judge Alfonse J. Cifelli rejected defendant's arguments. In an oral decision delivered June 8, 2015, the judge determined defendant failed to demonstrate the search authorized by the warrant was unlawful. After carefully reviewing the facts and the law, Judge Cifelli explained that for allegedly false statements in an affidavit supporting a warrant to be material, the affidavit must no longer contain facts sufficient to establish probable cause when the allegedly false statements are excised. Judge Cifelli concluded that, contrary to defendant's arguments, probable cause for the issuance of the search warrant was clearly not provided from the interrogation of the defendant and/or from the search of defendant's automobile, but rather from the other information set forth in the affidavit.

We affirm, substantially for the reasons given by Judge Cifelli in his opinion. We add only the following. A defendant who seeks to overcome the presumption of validity accorded an affidavit supporting a search warrant must demonstrate the affidavit contains materially false information:

> There is, of course, a presumption of validity
> with respect to the affidavit supporting the
> search warrant. To mandate an evidentiary

A-1265-15T3

> hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient . . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.
>
> [Franks v. Delaware, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 2684-85, 57 L. Ed. 2d 667, 682 (1978) (footnote omitted).]

A defendant must make this showing by a preponderance of the evidence. State v. Howery, 80 N.J. 563, 567-68, cert. denied, 444 U.S. 994, 100 S. Ct. 527, 62 L. Ed. 2d 424 (1979).

Here, as Judge Cifelli explained, even if the detectives' questioning of defendant and search of his car's glove compartment are excised, the remaining content of Detective Weber's affidavit amply established probable cause for the issuance of the warrant.

A-1265-15T3

Because the material facts are largely undisputed, the judge did not abuse his discretion in denying defendant's motion to suppress without an evidentiary hearing. State v. Frank, 280 N.J. Super. 25, 43 (App. Div. 1995). Defendant's arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION